United States Court of Appeals
For the Eighth Circuit
_____

No. 22-2872
_____

Benedda Cotten; Terry Davis,

*Plaintiffs - Appellees*,

v.

Ryan Miller, in their individual capacities; Brian Graupner, in their individual capacities,

*Defendants - Appellants*.
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: March 14, 2023
Filed: July 24, 2023
_____

Before COLLOTON, MELLOY, and GRUENDER, Circuit Judges.
_____

COLLOTON, Circuit Judge.

     Benedda Cotten and Terry Davis sued police officers Ryan Miller and Brian Graupner under 42 U.S.C. § 1983. They claimed that the officers violated the Fourth Amendment by making a warrantless entry to the apartment occupied by Cotten and Davis. The district court granted summary judgment for Cotten and Davis. We

conclude that the entry did not violate their Fourth Amendment rights, and therefore reverse the judgment.

I.

At approximately 1:30 a.m. on May 4, 2019, officers Miller and Graupner were dispatched to a duplex in South Minneapolis in response to a 911 call reporting possible domestic violence. The officers received a report summarizing the content of the call through the computer system in their vehicle. The report stated that the call came from a neighbor regarding sounds coming from an upstairs apartment where a woman lived with her boyfriend and child. The neighbor heard yelling, screaming, and noise indicating that someone was being thrown around in the upstairs apartment.

The officers arrived at the duplex approximately ten minutes after the 911 call. As they approached the building, Miller believed he could hear children's voices that sounded playful. Graupner believed that he heard indistinguishable yelling.

Miller approached the front exterior door to the duplex, announced the officers' presence, and repeatedly kicked and knocked on the door. The downstairs resident who made the 911 call eventually opened the front door. She told the officers that she had heard screaming, screeching, and thuds coming from the upstairs apartment. She also told the officers that the voices sounded like a woman or a child, but that she could not discern what was said. At that point, the officers did not hear noise coming from upstairs.

Miller ascended the stairs to the second-floor apartment and said, "open the door, it's the police." Cotten asked from behind a closed door why Miller was there. Miller responded that "I'll force entry if I need to because I'm investigating a possible domestic." Davis then yelled from behind the closed door, "a possible domestic, for what?" Miller demanded that Cotten and Davis open the door. Cotten stated that

-2-

nobody inside the apartment was hurt, and Davis asked why the officers were there. Graupner then yelled at Cotten and Davis to open the door, or he would kick it in.

Nearly two minutes after the conversation began, Davis cracked open the front door. Miller commanded Davis to back up, and the officers entered the apartment. The officers then ordered Davis to face a wall in the apartment; when he did not comply, Miller placed him in handcuffs. Cotten asked the police why they had entered the apartment. She and Davis repeatedly denied any domestic violence. Graupner walked through the apartment and saw that nobody in the residence was harmed.

Miller patted down Davis for weapons and found a live .45 caliber bullet on Davis's person. The officers arrested Davis for unlawful possession of ammunition. The charge against Davis was later dismissed.

Cotten and Davis sued Miller and Graupner, alleging that the officers violated their Fourth Amendment rights by entering the apartment without a warrant. Both sides moved for summary judgment. The officers asserted that they were entitled to qualified immunity because they did not violate a clearly established right of the occupants. They argued that the warrantless entry was justified to assist potential victims of domestic violence who were injured or threatened with imminent injury. The district court granted summary judgment for Cotten and Davis. The court ruled that a report of domestic abuse by itself was not enough to justify the entry, and that the officers violated a clearly established right of the residents by entering the apartment without a warrant.

We have jurisdiction to review the district court's order denying qualified immunity, and we consider legal issues *de novo*. *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012). Summary judgment is appropriate if "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## II.

Warrantless searches of a home are presumptively unreasonable under the Fourth Amendment, *Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (per curiam), but the warrant requirement is subject to certain exceptions. One exception permits police officers to enter a home without a warrant if the officers act with probable cause to believe that a crime has been committed and an objectively reasonable basis to believe that exigent circumstances exist. *Radloff v. City of Oelwein*, 380 F.3d 344, 348 (8th Cir. 2004). "One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006).

Miller and Graupner argue that the 911 call and conversation with the downstairs neighbor established probable cause that domestic violence had occurred in the upstairs apartment. They maintain that exigent circumstances existed because the officers were unable to confirm the safety of potential victims who remained inside the apartment with the putative suspect.

Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Here, the officers were dispatched to the scene in response to a report of domestic violence. The report received by the officers explained that the 911 call came from a neighbor who thought "abuse" was occurring, and heard a "verbal argument," "someone being thrown around," and "yelling and screaming" in the upstairs apartment. The neighbor stated that a woman, her boyfriend, and a child lived in the apartment.

When the officers arrived, they spoke with the downstairs neighbor, who confirmed the information in the report, and told the officers that she heard "really, really aggressive" screaming, screeching, and thuds coming from the upstairs apartment. She also told the officers that the screaming and screeching sounded like it came from a woman or child. Although officers heard the sounds of a child acting playfully when they arrived, this innocent noise did not require them to disregard the report of a witness that she heard alarming sounds ten minutes earlier. Under the totality of the circumstances, the information presented to the officers established probable cause to believe that domestic violence recently had occurred in the apartment of Cotten and Davis.

The circumstances also created an exigency that justified the officers' warrantless entry. Miller and Graupner arrived at the scene approximately ten minutes after the neighbor called 911. The officers had been informed that sounds of distress were coming from a woman or child. And they were told that a man occupied the apartment with a woman and child. The officers had no reliable information that anyone had departed the upstairs apartment during the short period between the 911 call and their arrival. Under those circumstances, it was reasonable for the officers to believe that a woman or child in the upstairs apartment was a victim of domestic violence, and was injured or threatened with future injury.

The officers then spoke to Cotten and Davis through a closed door. Although Cotten told the officers that nobody inside the apartment was injured, an officer need not take a putative victim's statement at face value when assessing whether a suspect presents an ongoing threat to the victim. *See United States v. Bartelho*, 71 F.3d 436, 441-42 (1st Cir. 1995). We have recognized that "domestic disturbances are highly volatile and involve large risks." *United States v. Henderson*, 553 F.3d 1163, 1165 (8th Cir. 2009) (per curiam). With probable cause that domestic violence recently occurred in the apartment, a reasonable officer was not required to deem a denial

-5-

through a closed door sufficient to dispel the concern that a potential victim was injured or threatened with future harm.

The officers also reasonably could have believed that exigent circumstances existed because the putative suspect remained in the residence with a potential victim. *See Tierney v. Davidson*, 133 F.3d 189, 197 (2d Cir. 1998). Cotten and Davis argue that the presence of a domestic violence suspect in a residence does not by itself create exigent circumstances. To be sure, this court held in *Smith v. Kansas City Police Department*, 586 F.3d 576 (8th Cir. 2009), that officers could not enter a residence without a warrant to arrest a domestic violence suspect after the suspect had relocated to a place where the alleged victim was not present. *Id.* at 580-81. The arrest of a domestic violence suspect does not create exigent circumstances justifying a warrantless entry if there is no reason to believe that the suspect presents a danger to others at the location. *Id.* at 580.

The officers here, however, had reasonable grounds to believe that a domestic violence suspect was still inside the home with a putative victim. Based on the 911 call and the report of the downstairs neighbor, it was reasonable to infer that the suspect posed a threat to a victim. The location of the entry was the same place where alleged abuse had occurred ten minutes earlier. Under the totality of the circumstances, a reasonable officer in the position of Miller and Graupner could have concluded that entry was necessary to provide assistance to a victim who was already injured, or to prevent future harm to a potential victim. The entry thus did not violate the Fourth Amendment rights of Cotten and Davis. As such, the officers were entitled to summary judgment.

\*   \*   \*

For these reasons, we reverse the judgment of the district court, and remand with directions to enter judgment for the defendants.

_____